[No. 25570.   Department One.   July 3, 1935.]

EARL C. HENNING, *Respondent*, v. JOHN MANLOWE *et al., Appellants*, NATIONAL CARLOADING CORPORATION, *Defendant*.[1]

*Ralph B. Potts* and *Whittemore & Truscott*, for appellants.

*Koenigsberg & Sanford* and *Padden & Moriarty*, for respondent.

[1]Reported in 46 P. (2d) 1057.

TOLMAN, J.—This is an action for personal injuries which was tried to a jury, resulting in a verdict in favor of the plaintiff and a judgment thereon, from which the defendants have appealed.

The sole question raised in this court is: Was the plaintiff guilty of contributory negligence, as a matter of law, and should the trial court have so held when the question was raised by a challenge to the sufficiency of the evidence at the close of plaintiff's case, when the challenge was renewed after all of the evidence had been received, or after verdict on the defendants' motion for judgment *non obstante veredicto?*

The issue here being so limited, we shall attempt to set forth only such of the facts as are necessary to a decision of that question.

The appellants own and operate a truck engaged in hauling freight. Upon the evening in question, the truck ran out of gasoline and was parked by the driver on his righthand side of the highway, partly on and partly off of the paved portion. The truck was left standing in that position while the driver went to obtain gasoline. The night was dark with some haze, but no rain or fog. The pavement was twenty feet wide with a gravel shoulder seven feet wide on the right and a gravel surface thirty-one feet wide on the left. The standing truck occupied some seven feet of its righthand side of the paving and had no light or an insufficient light in the rear.

Respondent, driving a light coupe and traveling in the direction in which the truck was headed, approached it from the rear. Some two hundred and fifty feet before reaching the truck, he came over the crest of a hill and started to descend on a four per cent grade, traveling at about thirty miles per hour. Almost immediately after passing the crest of the hill, respondent saw a car coming toward him, driving well

toward the middle of the pavement. The glare from the headlights of the approaching car interfered with his view ahead and somewhat nullified the effect of his own headlights. Respondent kept well to the right, perhaps slowed down slightly, and not until that car had passed him and he was within some forty feet of the standing truck did he see it. The respondent testified:

"A. As this car passed me, of course I was still going approximately the same speed, perhaps I slowed up just a little bit, and you know how lights kind of blind a person—they don't blind you, they just sort, kind of flare in your eyes— . . . Q. Tell what happened. A. And I opened my eyes, I was just looking ahead, and as I kind of got my bearings, this object loomed up in front of me. Q. How far ahead? A. Well, it was a very close distance. I would say not over thirty-five feet at the very best, possibly not that far. It was very close. Q. When it first loomed up in front of you, could you distinguish the outlines, or what did it appear to be? A. I could not. It is just hard to explain, just a gray object. It is another thing to distinguish what it might be. It just loomed right in front of me, just like a big mountain. Q. Was there any red light in front of you? A. There was not. Q. As you approached it, coming down to it, did you see any light on it? A. There was not. If there had been a red light, I could have distinguished it. Q. When you first saw it looming up in front of you, what did you do? A. Well, my first impulse was to turn up outside the road to pass it. And just as I turned out outside the road, with my car still going, I was probably just at the back of the truck, and I seen another car coming towards me. And my first instant thought was to accelerate my speed, because I knew if I didn't, I was going to get into a jam alongside this truck. So I was just up—just turned around. The back end of my car was just to the side of the front of the truck. I would say another instant, practically a piece of an instant, I would have passed the truck. This other car hit me on the lefthand side, hit me here. Q. What

part of your car did the other car hit? A. Right—yes, I recall it, just hit the back fender, my left back hind wheel. Q. When it hit your car, what happened to your car? A. When it hit my car, with the jam throwing me out, it threw me out, and I don't know what the cause was, I will never know. It caught me somehow or other, and it throwed me out on my shoulder. And somehow or other, my feet got tangled up as I went out of the car. And my left hind wheel run over me."

On cross-examination, respondent testified that the approaching car, which afterwards collided with the car he was driving, was distant one hundred to one hundred and twenty-five feet when he first saw it as he started to turn out to pass the truck. Otherwise his case was strengthened rather than weakened by cross-examination.

Of course, there was much other evidence bearing upon the question of contributory negligence, but that only strengthens the position of the trial court in refusing to take the case from the jury.

▬ Appellant seems to contend that, taking the evidence most favorable to the respondent as true, reasonable minds must agree that, acting prudently, under the circumstances, respondent would have stopped behind the truck until the approaching car had passed or would have driven across the pavement and on to the expanse of gravel on the left. It is possible, though extremely doubtful, if, using due diligence, he could have stopped behind the truck. After having turned to the left to pass the truck and then discovering the approaching car, it is extremely doubtful if he could have turned back to the right out of the way of the approaching car and stopped before colliding with the truck. To drive across the path of the approaching car so as to get off of the pavement on the left, involved certain elements of danger, the gravel space

on the left was not within the radius of respondent's headlights, and if he knew that there was a safe place on the left of the highway which he might safely reach, our attention has not been called to any evidence to that effect.

Respondent was driving at a very modest rate of speed, with no reason to expect an obstruction to his progress. The jury was amply justified in believing that he used due diligence in looking ahead, and that the stalled and unlighted truck in his immediate path constituted an emergency for which he was in no way responsible, and that, under the emergency rule, respondent's error of judgment, if any there was (which seems to us doubtful), was clearly excusable.

We are convinced that respondent was not guilty of contributory negligence, as a matter of law, and that the evidence was amply sufficient to warrant the jury in finding that, in fact, he was not so guilty.

The judgment is affirmed.

MAIN, BEALS, STEINERT, and GERAGHTY, JJ., concur.